Judge Carr.
Ball applied to the County Court of Hanover for leave to alter a road. The road to be altered is designated in the motion as “ the road leading from the Old Church, by Cold Harbour, to Richmond. ” That it is a road leading to Richmond, is mentioned in the petition (I presume) to bring it within the law, which gives a citizen a right to make application for the opening a road, or altering a road, leading to the Seat of Government. The Court appointed viewers, who, being first sworn, were “to view the road and ground, along which it was proposed to be conducted, and to report to the Court truly and impartially, the comparative conveniences and inconveniences, which would result, as well to individuals as to the public, if such road should be turned.” The viewers make a report, with a diagram shewing very clearly the course and distance of the contemplated change, giving their reasons why they think the new road will be better for the public, of great convenience to Ball, and of no inconvenience to any Individual. On the return of this report, Atkinson was permitted to enter himself a defendant. The cause was eon. tinued for about twelve months; and then, on a .hearing, the report of the commissioners was approved., and leave *448 given to Ball to turn the road accordingly. From this decision, Atkinson appealed. It was tried in the Superior Court. Many witnesses were examined; and the judgment of the County Court affirmed. Atkinson appealed to this Court, having filed two bills of exception to the opinions of the Judge. The evidence also, given in the Superior Court, is spread upon the record, in obedience to the law.
If I felt doubtful as to the weight of this evidence, the opinion of the Courts, who heard the witnesses, would lurn the scale. But, I am not doubtful. The number of witnesses, and the weight of evidence, are with the decision, in favor of the new road. This point, indeed, if not given up, was not relied on, in the argument.
The whole rests upon the two points made in the Superior Court. The second seems to come first in the natural order, as it strikes at the foundation of the proceeding. The appellant moved the Court to reverse the judgment, and quash the order of the County Court appointing viewers, because that order does not designate any points or places within the county, at which the proposed alteration in the road should commence and terminate. The Court overruled the motion, and very properly, I think. The law requires no such particularity as this. It says, where a party shall make application to have ££a new road opened, or a former one altered, the Court shall appoint viewers,” &c. The reason of the thing requires no such strictness. The view is a mere incipient step, to bring the matter before the Court. If, in the motion made for a view, it is shewn, that the road leads to one of the places, (the courthouse, warehouse, landing, &e.,) mentioned in the act, that is enough. The Court, then, names viewers, who act upon oath, and their report shews the particulars. It is upon this that the Court acts, and also upon any other evidence, which the parties may bring before them. If, upon the return of this report, it appears, that the proposed change will carry the road through the lands of others, not parties *449 to the motion, a summons issues, &e. I do not think that this exception has any thing in it.
The next is, “ the appellant moved the Court to reverse the judgment, &c. because the County Court established the road, running across the lands of the heirs of Hooper, without any previous summons having been served on the tenants or proprietors of the land, or their having been, in any way, made parties to the controversy.” If this objection had been founded in fact, it would have been a sound one. But I think, with the Judge, that it is not so founded. This matter will be clearly understood, by looking on the diagram, and comparing it with the report The viewers say, the new road strikes off from the old at N. Johnson’s residence on Ball’s land (letter A.) and is 1,320 yards, to where it intersects the established road. From Rawleigh to Cold Harbour tavern, is 96' yards. Now the old road runs by Cold Harbour; so that, here would naturally end the alteration: and they report, that from the commencement of the new road to its intersection with the Rawleigh road, it is solely on Ball’s land, and that the old road, from where the new one leaves it to Cold Harbour, is on Ball’s land. But, to shew more clearly the advantages of this new road, and to give a view of the whole ground, the viewers add, that just at the spot where the new road intersects the Rawleigh road, there strikes off from that road, one, which has been used for more than twenty years, as a near cut from the Richmond road, into the Rawleigh road. By taking this near cut, the acute angle made by the Rawleigh and Richmond roads, at their point of junction at the Cold Harbour tavern, is avoided; and a traveller would gain by it 146 yards. It is this near cut, which, the viewers tell us, borders on Hooper’s estate ; and it is on this, that the objection hangs. But, so far from considering this near cut as a part of the new road, they expressly state it in their report, to have been hi use upwards of twenty years; and in their diagram, they also distinguish it from the new road, laying down the lat *450 ter by black lines, and merely dotting the near cut, to shew its direction.
Some of the advantages to Ball by the change, are, that it will save him 2,000 yards of fencing, and enable him to have water in a pasture field, now without. The sole disadvantage to the appellant, is, that he is the keeper of the Cold Harbour tavern, and that this new road, instead of forcing travellers by his door, will bring them within 96 yards; leaving them the choice of taking the near cut, and avoiding the angle; or following the old road, and passing his door.
The case seems to me a very clear one for affirmance.
Judge Cabeei..
This is an application to turn a road. All the preparatory proceedings appear to have been sufficiently regular; and the only question before us, is, whether the proposed change shall be established or not.
In such a question, the public convenience should be the ruling consideration; and on this point, the testimony (all of which is in the record) is contradictory. The witnesses are nearly equally divided. Those, however, in favor of the new route, appear to have examined both routes most carefully, for the purpose of ascertaining their comparative merit in relation to the public convenience; and I acknowledge, that I should, therefore, be disposed to respect their testimony, more than that on the opposite side.
But, suppose the witnesses were precisely equal in number, and that their testimony, judging by the record only, appeared to us to hang precisely in equipoise.
Witnesses should be weighed, not numbered; and in estimating the weight of testimony, the Judges of the Superior Court of Law, who see and hear the witnesses examined, possess advantages which we have not. The justices of the County Court have the same advantages as the Judges of the Superior Courts of Law; to which may be *451 -superadded an intimate personal knowledge of the character of each witness. In a doubtful case, therefore, upon a subject of this nature, I should always lean in favor of the eon-current judgments of these two tribunals.
Both judgments should be affirmed.
Judge Gkeen.
This is an application to turn an old road, which runs from the Old Church to Richmond, and crosses the Bottom’s Bridge road nearly at right angles. The proposed substitute for the old road, and which was sanctioned by the judgments of the County and Superior Courts, terminates at the Bottom’s Bridge road, ninety-six yards from the crossing of the old road and the Bottom’s Bridge road.
From this termination of the new road in the Bottom’s Bridge road, the traveller must go to the old crossing of the roads, to travel towards Richmond. From the point, where the new road leaves the old road, to the old crossings by the new road and Bottom’s Bridge road, is ],416 yards; and by the old road, is 1,180 yards; so, that the old road is 236 yards shorter than the proposed road, between the two points in which they coincide. In respect to the qualities of these roads respectively, I consider them as proved to bo equal; and so far as the public are concerned, the old road is preferable in respeet to distance, by 236 yards in less than a mile.
There is an old established tavern at the old crossings of the road, and as the road is established by the judgments in this case, those travelling by the Old Church road to Richmond, would still be obliged to pass by this tavern.
But, if the new road be established, it will be a matter of course to open a new road, pointed out by the commissioners as the near cut, which would be a continuation of the road now proposed, and would fall into the Richmond road a considerable distance from the tavern, so as to carry travellers to Richmond, without passing the tavern; and *452 when this is done, the new road would be, from the deparlure from the old road to its junction again with it, 1,470 yards long, and the old road, 1,380 yards; leaving the old road still preferable, in respect to distance, by 90 yards. If it is not, therefore, against the public interest to change the old road, it certainly does not appear to be necessary for the public convenience, to do so.
The individual benefits to Ball, the applicant, from this change, are, that he will save 2,000 yards of fencing, and have a pasture with water, which it is now destitute of: that some facilities will be afforded him in hauling wood; and that he will be enabled to make his house, which is 81 yards from the new road, a public house; whilst the injury that may result to the appellant, the occupier of the old tavern, consists in the diversion of the travelling custom from his house to Ball’s. Both the old and the new road are entirely on Ball’s land.
The legal presumption is, that when this old road was established, a fair and full compensatign was made to the owner of the land, for any damages which he thereby suffered, and we may confidently believe, that the convenience of the cross-roads as a place for a house of public entertainment, and the well-founded confidence that these roads would not. be changed, but for the public convenience, or for the advantage of one individual when it would not injure another, was the inducement to the owner of the tavern, to lay out his money to provide a house of public entertainment. This gave him rights, which, although not amounting to absolute property, were in the nature of property, (as the good will of a trade,) the loss of which would inflict upon him an injury, equal to the loss of specific property of the same value. A sacred regard to the rights of property, is the foundation of all law and civilization; and the smallest scintilla of right ought not to be invaded. The maxim, “sic utere tuo ut alienum non Icedas,” applies to this case. The interests of the appellant, so acquired, should yield to the public, but to no private *453 interest. When he acquired that interest, he knew that according to existing laws, he must yield.it to the public convenience, when required. The judgment should be reversed.
The judgment was affirmed, two Judges constituting a majority of the Court.*

 The President and Judge Goakekr absent.